IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | |
| | § | CRIMINAL NO. H-09-342 |
| ROBERT ALLEN STANFORD; | § | (J. Hittner) |
| LAURA PENDERGEST-HOLT; | § | |
| GILBERTO LOPEZ; | § | |
| MARK KUHRT; and | § | |
| LEROY KING | § | |

## DEFENDANT LAURA PENDERGEST-HOLT'S MOTION FOR PAYMENT OF FEES OR IN THE ALTERNATIVE, STAY OF CRIMINAL PROCEEDINGS

Defendant Laura Pendergest-Holt moves the Court to exercise its ancillary jurisdiction[1] and order Lloyd's of London ("Lloyd's") to honor its prior representations and obligations to her. In the absence of such an order or compliance with it, Mrs. Holt moves that that Court enter an order staying the pending criminal proceedings until the issue involving Lloyd's obligation to pay legal fees to Mrs. Holt is resolved.

## BACKGROUND[2]

1. This case arises out of the seizure of Stanford International Bank, Ltd., Stanford Capital Management, LLC, Stanford Financial Group Company and the

---

[1] At the June 29, 2009 hearing regarding bond for Defendant Robert Allen Stanford, this Court invited the lawyers for all the defendants to inform the Court of any problems with regard to payment in order to "get the attention of the powers that be up there in Dallas." *See* June 29, 2009 Transcript of Motion Hearing R.R. p. 61, l. 1-8.

[2] Citations to the Appendix In Support of Defendant Laura Pendergest-Holt's Motion For Payment of Fees or In the Alternative Stay of the Criminal Proceedings are in the form of "App.__."

Stanford Group Company (collectively, "the Stanford Group"), among other entities, by the Securities & Exchange Commission (the "SEC") and the criminal prosecution of Mrs. Holt and others by the Department of Justice (the "DOJ").

2.     Mrs. Holt was the Chief Investment officer of Stanford Financial Group Company.  She is an insured pursuant to the following insurance policies issued by Lloyd's: (1) Lloyd's D&O and Company Indemnity Policy, reference number 576/MNK558900; (2) Lloyd's Financial Institutions Crime and Professional Indemnity Policy, reference number 576/MNA85300; and (3) Lloyd's Excess Blended "Wrap" Policy, reference number 576/MNA831400 (the "D&O Policies")[3]. (App. 1-153).  Mrs. Holt is an officer as defined in the Policy and is entitled to a defense pursuant to the terms of the D&O Policies.  The D&O Policies' definition of "costs, charges, and expenses" provides for payment for reasonable and necessary attorneys' fees incurred in defense of any claim. (App. 7-8)  These terms are broadly defined so as to include defense of the criminal case, and Lloyd's has acknowledged such in writing, on three separate occasions, to defense counsel of their obligation to pay such defense costs. (App. 154-164)

3.     On February 17, 2009, the SEC filed its Complaint against Plaintiff in the matter entitled <u>SEC v. Stanford International Bank, Ltd., Stanford Group</u>

---

[3]     Sections one and two of the Lloyd's Financial Institutions Crime and Professional Indemnity Policy provide coverage to the Stanford entities for financial institutions crime and electronic and computer crime. (App. 55-97).  Because these sections have separate policy limits and require the payment of separate premium, the granting of this motion would have no effect on such coverage. (App. 56-57).

Company, Stanford Capital Management, LLC, R. Allen Stanford, James M. Davis, and Laura Pendergest-Holt, Case No. 3:09-cv-0298, in the United States District Court for the Northern District of Texas – Dallas Division.

4.     In connection with the SEC's lawsuit against Mrs. Holt, and at the request of the SEC, the district court froze ***ALL*** of Mrs. Holt and her husband's assets. Accordingly, Mrs. Holt is without any ability to independently fund her own defense.   The district court also appointed a Receiver to take control of all of Mrs. Holt's personal property and assets.  The Receiver (working in conjunction with the SEC) has steadfastly refused to provide Ms. Holt with access to any funds to live on, much less funds for attorneys in order to defend herself.

5.     On February 25, 2009, Mrs. Holt timely submitted a notice of claim to Lloyd's concerning the SEC action and two additional civil class actions.

6.     On February 26, 2009, Mrs. Holt was arrested and charged by the DOJ with Obstruction of an Agency of the United Sates, the SEC.  On February 27, 2009 and on March 4, 2009, Mrs. Holt timely submitted additional notices of claims that identified the criminal matter as well.  It is anticipated that the defense costs in this case will be substantial.  There are millions of documents to review, hundreds of witnesses to interview, and experts who will need to be retained who will likely cost hundreds of thousands of dollars, all in addition to a trial that is expected to last for several months.

7.      On June 18, 2009, Mrs. Holt was charged in the indictment before this Court along with four other defendants.  The previous indictment against her was dismissed.

8.      The D&O Policies provide indemnity coverage for the Stanford entities and their officers and directors, including Mrs. Holt. (App. 55-97).  Lloyd's agreed in the D&O Policies to advance defense costs and expenses and to "pay…on behalf of the Directors and Officers" and "on behalf of the Company" for "Loss resulting from any Claim first made during the Policy Period for a Wrongful Act." (App. 6-8, 102-03)  A "Claim" means a "written demand for monetary damages," or a "judicial or administrative proceeding initiated against any of the Directors and Officers or the Company in which they may be subjected to a binding adjudication of liability for damages or other relief." (App. 7, 102).  The D&O Policies therefore provide only for the payment of amounts owed to third-parties (in this case Mrs. Holt's defense lawyers), not for the payment of amounts that may be owed directly to the Stanford entities.

9.      Lloyd's advised Mrs. Holt and her lawyers that they would advance defense cost to her for both the SEC and the criminal case, with the first payment scheduled for July 1, 2009. (App. 154-164).

10.    On June 25, 2009, counsel for Lloyd's[4] wrote that they "learned for the first time [on June 24, 2009]" that the Receiver[5] "now takes the position that all proceeds under the policies…are 'Receivership Assets' as defined by the Court's February 17, 2009 order." (App. 165).  Lloyd's further advised that "the Receiver has taken the position that his right to the proceeds 'supersedes' the right of the insureds." (*Id.*).  Because the Receiver has threatened to pursue contempt charges, Lloyd's advised that no payments will be made absent a ruling from the Dallas District Court. (165-66).

11.    The Receiver's threat (while giving Lloyd's a reason to delay payment) is entirely unfounded.  *First,* D&O Policies are **not assets of the Receivership Estate because they merely promise to pay defense costs** and potential damages to third parties.  *See In re Edgeworth,* 993 F.2d 51, 55-56 (5th Cir. 1993); *Executive Risk Indemnity, Inc. v. Integral Equity, L.P.*, 2004 WL 438936, at *13-14 (N.D. Tex. Mar. 10, 2004).

12.    Moreover, the post-Enron surge in D&O litigation has given many other courts the opportunity to address cases in which both the entity and the directors and officers were covered by a D&O policy, and those cases repeatedly have recognized directors' and officers' entitlement to payment of defense costs.  *See,*

---

[4]    Lloyd's is represented by Barry A. Chasnoff and Daniel McNeel Lane, Jr. of the law firm Akin Gump Straus Hauer & Feld LLP in San Antonio. Counsel for Holt expressly invite this Court's questioning of said Counsel on the issues addressed by this motion.

[5]    The Reciver, Ralph Janvey, is represented by the law firms of Baker Botts and Thompson and Knight.  It is unclear whether which firm (if either) will continue to take the position that payment of fees to the criminal defense counsel is inappropriate if called upon to answer such question before this Court.

*e.g., In re Adelphia Communications Corp.,* 298 B.R. 49, 54 (S.D.N.Y. 2003) (proceeds not property of estate because no cognizable interest has arisen); *In re Enron Corp.,* 2002 WL 32151530, at *1 (Bankr. S.D.N.Y. 2002) (lifting stay for payment of defense costs in accordance with policy terms); *In re Laminate Kingdom LLC,* 2008 WL 1766637, at *3, 5 (Bankr. S.D. Fla. Mar. 13, 2008) (permitting insurer to reimburse the costs of defense incurred by Directors and Officers).

13.    *Second,* the D&O Policies have never been declared by the Dallas District Court to be a part of the Receivership Assets. (App. 167-77).  In fact, the Receiver never even made such a claim until the *week before the first payment to Ms. Holt's lawyers was due.*  Prior to that time, in no filing did the Receiver ever claim an interest – much less exclusive ownership – of the D&O Policy.

14.    *Third,* the Receiver has never made a claim on the policies and, even if it ever did, those claims would likely be invalid.[6]

15.    Nevertheless, Lloyd's (conveniently) has accepted the bald assertion by the Receiver and has refused to pay any fees owed. This "blind acceptance" by the Lloyd's on the part of an extra-judicial "claim" by the Receiver is tantamount to "bad faith." The refusal of Lloyd's to pay defense costs of counsel for indicted

---

[6]    The company is a named insured but the Receiver has never made a claim and any claim it did make would likely be barred under various exclusions under the Policies.

defendants for whom they have previously acknowledged a duty to pay *directly interferes* with this Court's "orderly administration of justice."

16.     Ms. Holt promptly filed a Motion before the United States District Court for the Northern District of Texas (Hon. David Godbey) to clarify that the D&O Policies are not a part of the receivership estate.  That motion remains pending.

17.     In response to Ms. Holt's motion, the Receiver acknowledged that Ms. Holt was an insured under the D&O Policies and had an interest in the proceeds.  (App. 178-196).  As a result, the Receiver was forced to back away from its earlier meritless claim that the D&O Policies were its *exclusive* property and instead suggested to the District Court that it *sua sponte* **"allocate"** the policy proceeds among the various claimants.  *Id.*

18.     Of course, the Receiver demanded that the Court allocate the majority of the insurance proceeds to itself even though it has not made a claim under the policy.

19.     Given that the Receiver acknowledges that policy should be "allocated"[7] among the parties, it cannot be contempt for Lloyd's to pay Ms. Holt's legal bills. Nevertheless, Lloyd's continues to refuse to pay *ANY* of Ms. Holt's bills. Meanwhile, revealing its true motive, the Receiver continues to refuse to withdraw its threat to Lloyd's that it will seek contempt if they pay any of Ms. Holt's bills.

---

[7]     Ms. Holt disputes that the District Court (Hon. David Godbey) has any power to simply allocate a policy's coverage among various claimants (such as Ms. Holt) and non-claimants (such as the Receiver).  The policy is a contract – Ms. Holt has made a valid claim and the insurer is contractually required to advance her defense costs. The Receiver's request to allocate the policy is simply a bad faith attempt to (a) block Ms. Holt from having access to funds to defend herself and (b) use her desperate financial condition to grab a large portion of the policy for itself even though it otherwise has no valid claim to those proceeds.

20.     While Ms. Holt's lawyers have no funds to adequately prepare her defense, the Government, the SEC and the Receiver continue to jointly cooperate on Ms. Holt's criminal prosecution.

21.     While the Receiver's position is still not supported by the law, it is no longer true that the Receiver is claiming an entitlement to all of the proceeds of the D&O Policies. Thus, of course, fees should have been paid. Nonetheless, Lloyd's continues to refuse to pay *ANY* defense costs to Mrs. Holt.  There is, simply put, no legal reason to refuse to pay legal fees which have been legitimately incurred by the undersigned's efforts to render effective assistance of counsel to Ms. Holt.

## DISCUSSION

### A.     The Court Should Exercise It's Ancillary Jurisdiction to Order Lloyd's to Honor Its Obligation to Mrs. Holt

22.     The Court should compel Lloyd's to fulfill its written promise and ultimate obligation to pay under the policy.  As precedent for such action, Mrs. Holt points the Court to the decision in *United States v. Weissman*, 1997 WL 334966 (S.D.N.Y. 1997) which involved a similar set of circumstances as this case.

23.     In *Weissman*, a criminal defendant was promised the advancement of legal fees by his former employer, Empire.  The company advanced some fees, but then decided it would cut off its payments.  The defendant moved the court for an order compelling Empire to pay.  The Court said it could entertain the application only if it determined that it was appropriate to exercise the court's ancillary jurisdiction

8

since there was no diversity of citizenship between the defendant and Empire and no federal question.  The Court considered a number of factors, including "the convenience of the parties, judicial economy, the court's familiarity with the underlying subject matter, and the court's need to protect its officers." *Id.* at 21.

24.     Of utmost importance to the Court was "whether the exercise of jurisdiction is necessary to provide a fair resolution of the underlying matter, and to allow the court to administer its proceedings." *Id.*   The Court exercised its ancillary jurisdiction, holding:

> I believe that the exercise of jurisdiction over the present dispute is generally necessary to permit proper administration of this case, and to assist in reaching a just resolution of the underlying proceeding.  The issue presented by this motion concerns the funding of a criminal defendant's litigation expenses in an ongoing case before this Court.  This would seem precisely the sort of instance in which ancillary jurisdiction is warranted.  It is one thing for the court to decline jurisdiction over a dispute that is wholly collateral; it is quite another when the resolution of the dispute might impact on the conduct of the matter that gives rise to the court's original jurisdiction.

> If I were to decline to exercise ancillary jurisdiction, so that these issues would need to be resolved in state court, I would be presented with two options.  I could continue to stay the present criminal proceedings until the state court action is concluded, and all state appeals exhausted.  This would then be deprived of its ability to control the timing of a criminal case before it, and the conclusion of that case could be subject to extensive delay.

> Alternatively, I could permit [the case] to proceed in the absence of any resolution of this question.  Because the present motion concerns Empire's duty to advance fees to Weissman as they are incurred, the result of such a procedure would be a de facto denial of Weissman's application.

9

*　　*　　*

It is not hard to conceive of other situations where permitting the determination of who will advance money for payment of a criminal defendant's counsel to be litigated in one judicial forum, while the criminal case itself progresses in another, could undermine the efficient conduct and fairness of the criminal proceedings.  The defendant's attorney could find it difficult to continue footing the bill for an expensive defense. * * * For Weissman, it would be burdensome for him to have to litigate parallel civil and criminal proceedings, all the while remaining uncertain as to who would meet the costs of his defense.   On the other hand, I can see no inconvenience that would accrue to [the employer] by interpreting its indemnification agreement here, rather than in state court.[8]

25.    Admittedly, there is a lack of subsequent cases where Courts have exercised their ancillary jurisdiction in this scenario.  In fact there, is no authority in the Fifth Circuit dealing with the set of circumstances faced by Mrs. Holt in this case, or anything even remotely similar to it.  Lloyd's refusal to honor its advancement obligation combined with the Receiver's baseless interference with that obligation is a case of first impression in this circuit.

26.    Of the cases in other circuits that have come close to this set of facts, one Court has rejected the rationale of *Weissman*[9] while others have agreed with it, concluding however, that the facts of their respective cases did not justify the exercise of ancillary jurisdiction.  *United States v. Buhler*, 278 F. Supp. 2d 1297

---

[8]    After exercising its ancillary jurisdiction, the *Weissman* court held that the employer was required to pay for the defendant's defense.  "If Empire were permitted to benefit from this breach [of its obligation], its undertaking to 'advance' Weissman his legal fees would be rendered a nullity.  Empire could simply wait out the results of the action before deciding whether to pay the requisite costs; if the ultimate judgment was adverse to the defendant, Empire could claim that it was no longer required to pay the expenses previously incurred."

[9]    *United States v. Polishan*, 19 F. Supp. 2d 327 (M.D. Pa. 1998).

(M.D. Fla. 2003); *Fermin v. Moriarty*, 2003 WL 21787351 (S.D.N.Y. 2003). Most recently, in the Second Circuit Court of Appeals' reversal of the exercise of ancillary jurisdiction by the District Court in the KPMG case the Court took, "no view on the merits of *Weissman* because it is somewhat different from the [KPMG] matter." *Stein v. KPMG*, 486 F.3d 753, fn. 2 (2d. Cir. 2007). The court distinguished *Weissman* by saying that, "the issue of the employer refusing to advance expenses arose at a time when no disposition of the issue could reasonably be obtained in another forum." *Id.*, see also *United States v. Wittig*, 512 F. Supp. 2d. 1186 (D. Kan. 2007).

27.    Mrs. Holt argues that her case is similar to *Weissman* because no disposition of this issue can reasonably be obtained in another forum. Counsel for Mrs. Holt filed an expedited motion seeking disbursement of the D&O policy proceeds on June 30, 2009 in the Dallas District Court. (App. 197-212). To date, no hearing has even been scheduled on that motion despite the fact that the criminal case continues on. Moreover, this situation is exactly the one alluded to by the *Weissman* court where the issue of payment of criminal counsel fees being litigated in one judicial forum while the criminal case progresses in another, will undermine the efficient conduct and fairness of the criminal proceedings. If Mrs. Holt is forced to wait on a ruling from the Dallas District Court as to her fees, then her lawyers will have no choice but to file motions for continuance with this Court

until the fee issue is resolved in order to ensure Mrs. Holt's constitutional rights are protected. This case is virtually singular in its complexity, demands of counsel's time and commitment. Counsel cannot work "during the day" to adequately defend the rights of Ms. Holt and work "during the night" to force the carrier to pay fees that are both clearly due and acknowledged to be due by the carrier. Such a situation will cause this Court to lose control of its administration of justice in this case. Therefore, the Court should exercise its ancillary jurisdiction and compel Lloyd's to make good on its promise and pay the defense costs for Mrs. Holt.

28.    The *only* reason Lloyd's is refusing to pay is because of putative threat by the Receiver that it will seek to hold Lloyd's in contempt if they do. That threat (while utterly baseless) is no longer viable given the Receiver's current position regarding the D&O Policy. Nevertheless, the Receiver's "threat" imperils Ms. Holt's rights in *this case* and prevent her from being able to defend herself.

29.    This Court can and should exercise its ancillary jurisdiction to remove the Receiver's roadblock to Lloyd's fulfilling its contractual obligations.

### B.    If the Court Does Not Exercise Its Ancillary Jurisdiction, Then It Should Stay the Criminal Proceedings

30.    This is a complex case involving the review of millions of documents, the preparation of extensive pre-trial motions and ultimately a trial that by some estimates could last up to six months. Mrs. Holt's lawyers have already been

involved in the preparation of this case for trial for almost six months now and have been reviewing more than a quarter of a million documents that were initially produced as part of the original obstruction charge against her.  Hundreds of hours have been expended by counsel and untold preparatory and review sessions have occurred.  Lawyers assisting Ms. Holt have met together repeatedly in Houston, Dallas and elsewhere.  Expenditures have been made by counsel in good faith reliance on Lloyd's prior commitments to pay.  For example, counsel has already incurred more than $60,000 in copying costs alone.  Such effort, commitment and expenses cannot be expected to continue ad nausea absent timely payment of fees by the carrier.

31.    Counsel for Mrs. Holt cannot be expected to embark on such a substantial time commitment of pre-trial preparation and the expected lengthy trial without any financial security for their services, especially in light of a clear commitment by Lloyd's to pay Mrs. Holt fees (which they are simply ignoring).  Forcing Mrs. Holt's counsel to withdraw will not solve this problem either.[10]   Such a move will have the effect of denying Mrs. Holt her Sixth Amendment right to counsel of her choice.  Since all her assets are frozen (by the SEC in conjunction with the very

---

[10]      Counsel for Mrs. Holt does not want to withdraw.  Indeed, they continue to strongly desire to vigorously represent Mrs. Holt.  However, without a resolution of the financial issues such a motion may be required.  Whether either the Receiver, the carrier or the Government (or some combination thereof) actually **desires** counsel to withdraw for independent reasons is a matter that will not be addressed in the instant matter.

same receiver which has directly acted to thwart payment of legal fees) she will have no choice but accept the appointment of a lawyer by the Court.

32.    Lloyd's conduct directly affects the quality and integrity of the proceedings before this Court as well as Mrs. Holt's constitutional rights.  Lloyd's refusal to pay after clear language in both the D&O Policies and their letters approving payment should not be tolerated by this Court.

33.    If the Court is unwilling to exercise its ancillary jurisdiction and compel Lloyd's to pay Mrs. Holt's defense fees, then it should stay the criminal case until Lloyd's obligations are adjudicated and resolved.

## **CONCLUSION**

34.    Based on the foregoing, Mrs. Holt requests the Court exercise its ancillary jurisdiction as set forth herein.  In the alternative, she requests a stay of the criminal proceeding until the fee matter is resolved in order to prevent further violation of her rights.

DATED: August 24, 2009.

Respectfully submitted,

COGDELL LAW FIRM
402 Main Street, 2nd Floor
Houston, Texas 77002
Phone: (713) 426-2244
Fax: (713) 426-2255


___/s/_____
DAN COGDELL
State Bar No. 04501500
S.D. Tex No. 3810
JAMES ARDOIN
State Bar No. 24045420
S.D. Tex No. 571281

CHRIS FLOOD
FLOOD & FLOOD
914 Preston, Suite 800
Houston, Texas 77002
Phone: (713) 223-8877
Fax: (713) 223-8879

*Attorneys for Defendant*
*LAURA PENDERGEST-HOLT*

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that on August 21, 2009, I conferred with AUSA Gregg Costa who stated the Government's position was: "The United States does not have a position on the dispute between the defendants and Lloyd's, but believes that the Dallas district court presiding over the civil case, where motions on this issue are pending, is the appropriate forum for resolving this issue. The United States opposes a stay of the criminal case."

_____/s/_____
JAMES ARDOIN

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that the above and foregoing was served via the either the CM/ECF system or by other electronic means on the following individuals:

Mr. Gregg Costa
Assistant United States Attorney
*Via* CM/ECF system

Mr. Jack Zimmerman
Mr. Jim Lavine
*Counsel for Gilberto Lopez*
*Via* CM/ECF system

Mr. Richard Roper, III
*Counsel for Receiver Ralph Janvey*
*Via email* at richard.roper@tklaw.com

Robert I. Howell
*Counsel for Receiver Ralph Janvey*
*Via email* at
robert.howell@bakerbotts.com

Timothy Durst
*Counsel for Receiver Ralph Janvey*
*Via email* at tim.durst@bakerbotts.com

Mr. Barry A. Chasnoff
*Counsel for Lloyd's*
*Via email* at bchasnoff@akingump.com

Mr. Dick DeGuerin
*Counsel for Robert Allen Stanford*
*Via* CM/ECF system

Mr. Richard Kuniansky
*Counsel for Mark Kuhrt*
*Via* CM/ECF system

Kevin M. Sadler
*Counsel for Receiver Ralph Janvey*
*Via email* at
kevin.sadler@bakerbotts.com

David T. Arlington
*Counsel for Receiver Ralph Janvey*
*Via email* at
david.arlington@bakerbotts.com

Joseph Cialone
*Counsel for Receiver Ralph Janvey*
*Via email* at
joseph.cialone@bakerbotts.com

Mr. Daniel McNeel Lane, Jr.
*Counsel for Lloyd's*
*Via email* at nlane@akingump.com

_____/s/_____
JAMES ARDOIN